MICHAEL BAILEY
United States Attorney
District of Arizona
KRISSA M. LANHAM
Arizona State Bar No. 035085
WILLIAM G. VOIT
Arizona State Bar No. 025808
Email: William.Voit@usdoj.gov
SHARON K. SEXTON
Arizona State Bar No. 012359
Email: Sharon.Sexton@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Lezmond Charles Mitchell,

Defendant.

No. 20-CV-08217-DGC

**RESPONSE TO MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255. IN THE ALTERNATIVE, MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2241 (CR 1)**

**(Capital Case)**

More than three years after the Inter-American Commission on Human Rights ("IACHR") issued Precautionary Measures regarding Mitchell's execution, more than a month after it issued recommendations, and less than a week before his scheduled execution, Mitchell files yet another motion to vacate or set aside his sentence. Mitchell's latest attempt to challenge his sentence is unsound for numerous reasons.

*First*, it is untimely. Mitchell could have invoked his purported rights under the Organization of American States ("OAS") Charter and American Declaration of the Rights and Duties of Man ("American Declaration") at trial, on direct appeal, or in his first motion under 28 U.S.C. § 2255. And Mitchell could also have brought this motion years ago, when the IACHR issued Precautionary Measures. Indeed, in August of last year, defense

counsel referred to these measures as an "injunction" and told this Court that if the State Department did not agree to a settlement, "then we would probably need to file something in this Court." (Ex. 3 at F-081.) Mitchell waited until less than a week before his scheduled execution to do so. That delay alone forecloses the last-minute injunction that Mitchell seeks, which the Supreme Court reiterated just weeks ago "should be the extreme exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)); *see Bucklew*, 139 S. Ct. at 1134 (explaining that "the last-minute nature of an application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay") (citation omitted).

*Second*, Mitchell's motion is a second or successive motion for relief under § 2255, and he makes no showing of having obtained leave from the Court of Appeals to file the motion pursuant to 28 U.S.C. §§ 2244(b)(3)(A) and 2255(h). Furthermore, Mitchell's motion does not satisfy the requirements for a second or successive 2255 motion because the motion is not based on either "newly discovered evidence" of actual innocence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(1)-(2). Mitchell's motion must be denied for this threshold reason.

*Third*, all those defects aside, the defendant's sole asserted ground for relief has no legal basis: "every federal court of appeals that has" addressed this issue "has concluded that IACHR decisions do not have domestic legal force." *Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016).

## DISCUSSION

### I. The Motion Should be Denied Because Mitchell Delayed Too Long

Mitchell has known about the IACHR Precautionary Measures since July 2017, and he has known about its recommendations since July 2020. He nevertheless waited until August 21, 2020, less than a week before his scheduled execution, to bring the instant challenge. That delay alone warrants denial of his claim.

The essence of Mitchell's claim is that his arrest, trial, sentencing, and post-conviction proceedings did not comport with principles imposed by United States treaty obligations, as now interpreted by the IACHR. (CR 1 at 25-31). Mitchell's recognition that the IACHR does not itself create binding or enforceable individual rights, (CR 1 at 19), does not excuse his failure to alert this Court to the substantive provisions of the OAS Charter and the American Declaration that he believed would ultimately mature into enforceable rights. Mitchell failed to invoke those provisions, which he now claims his criminal proceedings have violated, at trial, on direct appeal, or in his first motion under 28 U.S.C. § 2255. By failing to call those provisions to this Court's attention, he deprived the Court of the opportunity (were it in fact necessary) to conform his trial, sentencing, and post-conviction proceedings to those provisions. Mitchell should not be permitted, years after his trial and sentencing, and when vast amount of resources have already been expended, to demand a new trial and sentencing based on provisions of law that he never called to the attention of this Court.

Moreover, for the express purpose of avoiding last-minute stay applications, this Court held a status conference on August 15, 2019, to discuss "issues in the case that are coming in, timing, and making sure that we are doing it on a schedule that works." (Ex. 3 at F-076.) Mitchell's counsel explained, "We filed a petition for violation of human rights in the Inter-American Commission on Human Rights. They've issued an injunction against Mr. Mitchell's execution. They issued that several years ago." (*Id.* at F-081.) Mitchell's counsel told the Court that if they were unable to resolve the matter with the State Department, "then we would probably need to file something in this Court." (*Id.*) Mitchell does not allege that any settlement negotiations in fact later occurred.

Ultimately, Mitchell did not bring his claim for a full year. Instead, he sought and was denied various other forms of relief, and has raised it here at the eleventh hour as part of a motion to vacate his sentence. Although Mitchell again asks the Court to stop his execution, as the Supreme Court emphasized again just last month, last-minute stays of execution "should be the *extreme exception*, not the norm." *Lee*, 2020 WL 3964985, at *2

(emphasis added) (quoting *Bucklew*, 139 S. Ct. at 1134). The prejudice here is manifest. Given the twenty years of litigation already, the public, the victims, and the victims' family all have an overwhelming interest in the execution proceeding as scheduled. *See Bucklew*, 139 at 1134. Many members of the victims' family have long supported his capital sentence. One has already made travel arrangements to be in Terre Haute for the August 26 execution.

There is no reason Mitchell could not have raised this issue at trial and sentencing, in his initial Section 2255 petition, a year ago, or at the very least a month ago, which would have allowed for fair briefing, court consideration, and reasonable appeals. A stay of execution was in effect for over ten months while Mitchell litigated the denial of his Rule 60(b) motion in his civil case, leaving him ample time to litigate this issue if he wanted. Mitchell is not entitled to an endless cycle of litigation where he raises one issue, loses, and only then raises another issue that he has long known about, in order to seek another stay. *See Gomez*, 503 U.S. at 654. Yet that is precisely what is happening: the Ninth Circuit denied his latest appeal on August 19, 2020; he filed this motion the next day.

His motion should be denied for this reason alone. *See, e.g.*, *Bucklew*, 139 S. Ct. at 1134 (stating that "federal courts 'can and should' protect settled . . . judgments from 'undue interference' by invoking their 'equitable powers' to dismiss or curtail suits that are pursued in a 'dilatory' fashion or based on 'speculative' theories") (citation omitted); *Hill*, 547 U.S. at 584 (noting with approval that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day").

## II. Mitchell's motion should be dismissed as an unauthorized second or successive motion under § 2255.

Mitchell's motion is not properly filed in this Court. He labels it primarily as a motion for postconviction relief under 28 U.S.C. § 2255, but it is not a proper § 2255 motion because it is second or successive and not authorized (or eligible to be authorized) by the court of appeals under § 2255(h). He alternatively labels it as a habeas petition

under 28 U.S.C. 2241, but the filing of such a petition is precluded by 28 U.S.C. § 2255(e), and even if it were permissible, the proper forum would be the district court in the district where he is incarcerated—namely, the Southern District of Indiana. Were it transferred there, or were Mitchell to file there, Seventh Circuit precedent would require the district court to consider it, but reject it on the merits. The government does not object to transfer, but dismissal or denial may be more appropriate under the circumstances.

**A. Mitchell's motion must be dismissed under 28 U.S.C. § 2255(h).**

1. Congress has provided federal prisoners with two distinct statutory avenues for seeking post-conviction relief: § 2255 motions and § 2241 petitions. *See* 28 U.S.C. §§ 2241 and 2255. A § 2255 motion generally is the exclusive means by which a federal prisoner may test the legality of his sentence. *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). In contrast, a petition under § 2241 is used to challenge "the manner, location, or conditions of a sentence's execution." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). Section 2255 motions must be filed in the sentencing court, and § 2241 petitions must be filed "in the custodial court." *Id*.

Carefully balancing the interests of finality and additional error-correction, Congress has enacted strict "gatekeeping" limits on a prisoner's ability to file successive § 2255 motions. A first § 2255 motion is generally subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). After a prisoner has exhausted his first § 2255 motion, he must obtain Court of Appeals authorization before filing any successive § 2255 motions. 28 U.S.C. §§ 2244(b)(3)(A), 2255(h). The Court of Appeals generally must certify the successive motion is based on one of two exclusive grounds: (1) "newly discovered evidence" of factual innocence, or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(1)-(2). These restrictions constitute "a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996).

Section 2255(h) does not authorize successive rounds of collateral review based on

new claims falling outside of its narrow scope. "Recognizing the enhanced finality interests attaching to a conviction already tested through trial, appeal, *and* one round of collateral review, . . . Congress has specified that only certain claims it has deemed particularly important . . . may be brought in a second or successive motion." *Prost v. Anderson,* 636 F.3d 578, 583-84 (10th Cir. 2011); *see Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) ("How often to rerun a search for error is a question to which § [2255(h)] speaks directly."). Section 2255(h) reflects Congress's determination that, once an inmate has pursued one § 2255 motion, his sentence may be subject to further collateral attack only in extremely limited circumstances involving newly discovered evidence strongly indicative of innocence or a new retroactive rule of constitutional law. *See United States v. Buenrostro*, 638 F.3d 720, 726 (9th Cir. 2011) ("As a 'modified res judicata rule,'…the second or successive bar *marks the end point of litigation* even where compelling new evidence of a constitutional violation is discovered….The only prisoner who will not reach that point is the one who obtains new evidence that could clearly and convincingly prove his innocence or who has the benefit of a new, retroactive rule of constitutional law.") (emphasis added).

2. Mitchell's motion is a second or successive motion for relief under § 2255; he makes no showing of having obtained leave from the Court of Appeals to file the motion pursuant to 28 U.S.C. §§ 2244(b)(3)(A) and 2255(h); and he could not satisfy the prerequisites for obtaining such leave. The Court must deny his motion for this threshold reason.

"Generally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition." *Cooper v. Calderon,* 274 F.3d 1270, 1273 (9th Cir. 2001) ("Because Cooper was aware of the factual predicate of this claim long ago and could have raised the claim in his first petition, his claim is 'second or successive.'"); *see also Brown v. Muniz*, 889 F.3d 661, 667 (9th Cir. 2018) (a habeas petition is "second or successive" "if the facts underlying the claim occurred by the time of the initial petition"). Here, Mitchell asserts that his 2255 Motion "raises claims

[he] could not have raised in his first petition," and therefore is not "successive." (CR 1 at 11.) Yet his motion raises a considerable number of claims that he in fact has argued, time and again, in the 17 years since his sentencing. His assertion that his claims "arise from a decision by the Commission issued on August 12, 2020" such that he could not have raised them earlier is incorrect. (CR 1 at 13.) He could have identified the IAHCR as an asserted basis for relief on those grounds at the same time he brought the corresponding claims under the federal Constitution.

In his current motion, Mitchell asserts the six "Claims for Relief" described below—each of which he has previously litigated:

**<u>Table Comparing Defendant's "New" and Previously-Litigated Claims</u>**

| "New" Claims for Relief | Previously-Litigated |
|---|---|
| "**A. Mitchell's right to be free from unlawful and arbitrary arrest was violated**" (FBI and Navajo police arrest; improper FBI questioning; time spent in custody; illegal detention) (CR 1 at 25) | Direct Appeal (CR 1 at 2, ¶ 5.4.f.9; *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007); Supreme Court (CR 1 at 6, ¶ 5.4.g.5.a) |
| **"B. Mitchell's right to a fair trial and to due process of law was violated"** (discussing Navajo Nation's objections/ lack of opt-in to Federal Death Penalty Act) (CR 1 at 26-27) | Direct Appeal (CR 1 at 2, ¶ 5.4.f.1; *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007)); Supreme Court (CR 1 at 6, ¶ 5.4.g.5.a) |
| "**C. Mitchell's right to effective assistance of counsel was violated**" (lack of experience of lead counsel at penalty trial; counsel failed to adequately investigate, and failed to present a voluntary intoxication defense, request a jury instruction on impaired capacity as a mitigating factor, ignored the opinion of the mitigation specialist and disregarded advice to follow up with a psycho-pharmacologist) (CR 1 at 28-29) | First 2255 Motion (CR 1 at 30, ¶ 12; *United States v. Mitchell*, 3:09-cr-08089-DGC, Doc. 30 at 70-128, 2010 WL 3895691, 2010 WL 5342960; 790 F.3d 881 (9th Cir. 2015)) |

| “New” Claims for Relief | Previously-Litigated |
|---|---|
| “**D. Mitchell’s right to effective remedies was violated**” (district court erroneously denied Defendant’s earlier 2255 motion raising ineffective assistance of counsel and other claims, and erroneously denied request for evidentiary hearing) (CR 1 at 29-30) | First 2255 Motion (CR 1 at 30, ¶ 12; *United States v. Mitchell*, 3:09-cr-08089-DGC, Doc. 30 at 70-128, 2010 WL 3895691, 2010 WL 5342960; 790 F.3d 881 (9th Cir. 2015)) |
| “**E. Mitchell’s right not to receive cruel, infamous, or unusual punishment was violated**” (right to be timely informed about the drug and method of execution that will be used; incarceration on death row) (CR 1 at 30-31) | Direct Appeal (CR 1 at 2, ¶ 5.4.f.30; ; *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007)); Protocol Challenge (*See* CR 606, 618) |
| “**F. Mitchell’s right to life will be violated if he is executed**” (cumulative claim asserting that “executing Mitchell after, inter alia, ‘the United States unlawfully arrested Mr. Mitchell, violated his due process rights, as well as his right to humane treatment and not to receive cruel, infamous or unusual punishment’”) (CR 1 at 31) | See above |

These claims—particularly their underlying factual predicates—are not “new.” They are, in substance, recycled versions of the same claims Mitchell raised and litigated in his direct appeal, his first § 2255 motion, and his recent challenge to the government’s execution protocol. Mitchell cannot use the IACHR Recommendation as a vehicle for repacking and reasserting them in a successive § 2255 motion. *See Gonzalez v. Crosby*, 545 U.S. 524, 529-30 (2005).

Mitchell’s authorities are not to the contrary. This case is not like *Woods v. Carey*, 525 F.3d 886, 888-90 (9th Cir. 2008), which construed a pro se litigant’s second § 2255 motion, filed while his first motion was still pending, as an amendment to that motion. (*Cf.* CR 1 at 11.) *Magwood v. Patterson*, 561 U.S. 320, 331 (2010), is likewise inapposite: it involved a collateral attack that was not “second or successive” because it challenged a *new* judgment and sentence. (*Cf.* CR 1 at 12.) And *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007)—the case on which Mitchell seems to rely most—has no application here. (*Cf.*

CR 1 at 12-13.) *Panetti* held that the statutory bar on "second or successive" applications did not apply to a *Ford* claim (regarding a prisoner's competency to be executed) asserted in a § 2254 petition filed by a state prisoner when the claim first became ripe. The petitioner's asserted competency status was a new factual predicate for a claim; before the competency issue was ripe, no claim of the sort could have been brought. That is not the case here. And enforcing the limitations of 28 U.S.C. § 2255 in this case accomplishes the same statutory goals identified in *Panetti*—including conservation of judicial resources, reducing piecemeal litigation, and bringing finality to post-conviction proceedings. *Panetti*, 551 U.S. at 946.

Mitchell cannot escape the bar on second or successive § 2255 motions by attempting to characterize the IACHR Recommendation as an intervening change in the law. First, as discussed below, the IACHR Recommendation does not have domestic legal force and is not binding on this Court in any way; accordingly, it does not constitute a change in "law." Second, even if the Recommendation were law, the statutory text of both section 2244(b) and 2255(h), the applicable provision here, demonstrate that second-in-time federal habeas petitions based on an intervening change in the law *are* "second or successive" under the AEDPA. Section 2255(h) illustrates Congress' intent to permit "second or successive" habeas petitions based on changed law only for changes in *constitutional law*. 28 U.S.C. § 2255(h); *see also id.* § 2244(b)(2)(A). And courts have consistently held that an intervening change in law does not exempt a second-in-time petition from the statutory bar on second or successive petitions. For example, in *In re Page*, 170 F.3d 659 (7th Cir. 1999), the Seventh Circuit held that a second petition attacking the prisoner's original judgment, the same judgment attacked by his first habeas petition, was successive within the meaning of AEDPA even though it was based on an intervening change in law. *Id.* at 661–62. *See also, e.g.*, *Gulbrandson v. Ryan*, 2018 WL 10456823, at *4 (D. Ariz. Apr. 13, 2018); *Lucero v. Cullen*, 2014 WL 4546055, at *9 (E.D.

Cal. Sept. 12, 2014).[1]

The lone outlying decision—*In re Tamayo*, 552 F. App'x 371 (5th Cir. 2014), which allowed a claim on the ground that the petitioner "could not have raised his claim based on [an] IACHR decision in his first federal habeas petition" and thus was not required to seek authorization to file a successive habeas petition, *id.* at 374—is an unpublished, nonbinding, out-of-circuit case, whose two-sentence analysis cannot be squared with the opinions discussed above or the statutory text. Indeed, under the view of § 2244(b) espoused by *Tamayo* and Mitchell here, "the district court could hear a second-in-time habeas claim arising from a change in … law" (his characterization of the IACHR Recommendation), "but a second-in-time claim based on a change in constitutional law would be considered successive and require authorization from the Court of Appeals. This anomalous outcome 'can't be right.'" *Gulbrandson*, 2018 WL 10456823, at *4 (quoting *In re Page*, 179 F.3d at 1026).

In short, the language of § 2255(h) compels one result here—Mitchell's second-in-time motion under § 2255, which is not based on a factual predicate that did not *exist* at the time of his prior motion, but rather is based on the IACHR's Recommendation, is an unauthorized second or successive § 2255 petition.

**B. Mitchell's second § 2255 motion fails to raise a valid § 2241 claim.**

1. Section 2255(e) contains a narrow "escape hatch" exception that permits a federal prisoner to file a § 2241 petition to challenge the legality of his sentence if, and only if, a § 2255 motion "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012). Critically, a

---

[1] Indeed, in *Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009), one of the cases cited in Mitchell's motion, the Fifth Circuit rejected the argument that the "sole requirement for a permissible non-successive petition is that the claim on which it was based had been unavailable at the time of a first petition." *Id.* at 220. Under this reading of the statute, the court noted, a petition would be "non-successive if it rests on a rule of constitutional law decided after the petitioner's first habeas proceeding because such a claim would not have been previously available," yet § 2244(b) "prohibits such a result." *Id.* at 221. Unlike *Quarterman*, however, Mitchell's second or successive motion under § 2255 does not "allege a defect that arose … after his conviction." *See id.* at 223-24.

§ 2255 motion "is not inadequate or ineffective merely because 2255's gatekeeping provisions prevent the petitioner from filing a second or successive petition." *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003). *See also Gilkey*, 314 F.3d at 835 ("not…sensible to read § [2255(h)] as making § 2255 'inadequate or ineffective' and thus nullifying itself"); *Prost,* 636 F.3d at 586 (if construed otherwise, "subsection (h) would become a nullity"). Rather, a prisoner can establish "escape hatch" jurisdiction only where he "(1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim."[2] *Stephens*, 464 F.3d at 898. Both requirements must be met. *Muth v. Fondren*, 676 F.3d 815, 818 (9th Cir. 2012). Mitchell cannot satisfy either prerequisite.

Mitchell cannot satisfy the first "escape hatch" prerequisite because he does not claim factual innocence. "[A] claim of actual innocence for purposes of the escape hatch of § 2255 is tested by the standard articulated by the Supreme Court in *Bousley v. United States*, 523 U.S. 614 (1998)." *Stephens*, 464 F.3d at 898. Under that standard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. To establish actual innocence, Mitchell "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Stephens*, 464 F.3d at 898 (quoting *Bousley*, 523 U.S. at 623). *See also Muth,* 676 F.3d at 819 (a petitioner must show that he is factually innocent, not merely that his conviction was legally insufficient.). Because Mitchell does not claim he is factually innocent, he

---

[2] The government's position is that a prisoner who has already unsuccessfully sought relief under § 2255 cannot establish his eligibility to file a habeas petition under the saving clause to assert a statutory challenge to his judgment on a ground that was cognizable in his initial § 2255 motion. Application of the saving clause in that circumstance would circumvent Congress's express limitations under § 2255(h) of second or successive motions to cases involving newly discovered evidence or new rules of constitutional law made retroactive on collateral review by the Supreme Court. See *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1079 (11th Cir. 2017); *Prost v. Anderson*, 636 F.3d 578, 590-92 (10th Cir. 2011) (Gorsuch, J.). The Ninth Circuit held otherwise in *Alaimalo v. United States*, 645 F.3d 1042, 1047-48 (9th Cir. 2011), and the majority of other circuits agree. The Government respectfully submits, however, that the Tenth and Eleventh Circuits have the better view of the relevant statutory provisions.

does not satisfy the "actual innocence" escape hatch prerequisite and his petition must be dismissed for this threshold reason.

Even if he had demonstrated (or could demonstrate) actual innocence, Mitchell cannot satisfy the second escape hatch prerequisite. In evaluating whether a he lacked an unobstructed procedural shot to bring his current claims, the Ninth Circuit generally considers: "(1) whether the legal basis for petitioner's claim did not arise until after he had *exhausted* his direct appeal and first § 2255 motion; and (2) whether the law changed in any way relevant to petitioner's claim after that first § 2255 motion." *Harrison v. Ollison*, 519 F.3d 952, 960 (9th Cir. 2008) (emphasis added). Stated differently, an intervening court decision must effect a material change in the applicable law to establish unavailability of a claim on direct appeal or in a prior § 2255 motion. *Id.* Mitchell does not point to an intervening change in applicable law effectuated by any court or tribunal.

Instead, Mitchell's sole basis for relief depends upon the asserted legal force of the IACHR Recommendations (its Precautionary Measures (issued July 2, 2017), Decision (issued July 14, 2020), and Report (issued August 12, 2020)). (CR 1 at 10.) Specifically, Mitchell contends that the Recommendations entitle him to relief from his capital sentence because the Commission concluded that his capital sentence violates his rights under the OAS Charter and the American Declarations on Human Rights. (CR 1 at 16-20). But the basis for that decision is the IACHR itself, which Mitchell does not assert has changed. His contention thus boils down to an assertion that Congress's carefully crafted procedures for channeling collateral review contain an exception when an international body interprets preexisting treaty provisions in a manner that favors a criminal defendant who has otherwise exhausted all of his potential avenues for collateral attack. He identifies no sound basis why such extraterritorial action would constitute a "change in law" that would allow a prisoner to raise those treaty provisions for the first time in an eleventh-hour pre-execution filing.

2. Although Mitchell alternatively styles his motion as a petition under § 2241, this court is not the proper venue for a § 2241 petition. Instead, such a petition should be

filed in the Southern District of Indiana, where petitioner is confined. The government recognizes that, in the Seventh Circuit, Mitchell would be considered to qualify for § 2241 jurisdiction, although his claim would fail on the merits under the law of that circuit. *Garza v. Lapin*, 253 F.3d 918, 921-924 (7th Cir. 2001) (exercising § 2241 jurisdiction over petition based on newly-issued report of the IACHR, but denying relief on the merits). To the extent that this Court agrees, the Court could transfer Mitchell's motion to the district of his confinement (the Southern District of Indiana) for consideration of the motion as a petition under 28 U.S.C. § 2241. The government does not object to such a transfer. But in light of the binding precedent in the Seventh Circuit—which fully accords with other circuits', see Part III, *infra*—the government does not believe it necessary under the circumstances.

**III. IACHR Recommendations are not enforceable in United States Courts.**

Even if Mitchell's claim were properly before this Court, the Court should reject it on the merits.

In invoking the Recommendations, Mitchell cannot contend that the OAS Charter and the American Declaration by themselves give rise to any rights that Mitchell may enforce. International agreements, even those benefitting private parties, generally do not create private rights enforceable in domestic courts. *See Garza*, 253 F.3d at 922-23; *Edye v. Robertson*, 112 U.S. 580, 598 (1884) ("A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress. . . . It is obvious that with all this the judicial courts have nothing to do and can give no redress."); *Medellin v. Texas*, 552 U.S. 491, 504 (2008) ("Not all international law obligations automatically constitute binding federal law enforceable in United States courts.") An international agreement may be found to create such rights only when they are contemplated in the agreement itself. *See* Restatement (Third) of the Foreign Relations Law of the United States § 703, cmt. c (1989); *id.* § 907, cmt. a; *e.g.*, *Froloya v.*

*Union of Soviet Socialist Republics*, 761 F.2d 370, 373 (7th Cir. 1985).

There is no indication in either the American Declaration or the OAS Charter that those instruments are intended to create privately-enforceable rights. Indeed, the American Declaration does not even create rights and obligations on the part of States. Rather, it "is an aspirational document which . . . did not on its own create any enforceable obligations on the part of any of the OAS member nations." *Garza*, 253 F.3d at 925. As for the OAS Charter, that document is an international agreement that has been ratified by the United States, but it does not give rise to individual, judicially-enforceable rights. Among other things, the Charter authorizes the creation of the Inter-American Commission "to promote the observance and protection of human rights and to serve as a *consultative* organ of [OAS] in these matters." OAS Charter (Amended), Feb. 27, 1967, art. 112, 21 U.S.T. 691 (emphasis added). The Charter further states that "[a]n inter-American convention on human rights shall determine the structure, competence, and procedure of this Commission, as well as those of other organs responsible for these matters." *Id.* Nothing in the Charter creates any independent, privately enforceable rights. Nor, indeed, does Mitchell identify any provision of the Charter that was allegedly violated in his case.

Moreover, the Recommendations themselves do not carry the weight of law and are not enforceable in this Court—as the clear language of the Recommendations themselves makes plain. As their names suggest, the Recommendations simply "request" or "recommend" that this Court take action. The Precautionary Measures "request[] the United States to adopt the necessary measures to preserve the life and physical integrity of Mr. Lezmond Mitchell until the IACHR rules on his petition," (Ex. 1 at 5); the IACHR "Recommends that the United States of America . . . [g]rant Lezmond M. Mitchell effective relief," (Ex. 2 at 26); and the Report reiterates its recommendation to grant Mitchell relief and "recommends that if the new trial results in a conviction, that Mr. Mitchell's sentence be commuted." (Def. Ex. 1 at 127 ¶ 1.) Mitchell argues that "this Court is obligated to follow the Commission's recommendation," (CR 1 at 16), but "'recommendations, . . . according to the plain language of the term, are not binding." *Garza*, 253 F.3d at 925.

Not only does Mitchell's claim fail based on the plain language of the Recommendations, but "every federal court of appeals that has" addressed this issue "has concluded that IACHR decisions do not have domestic legal force." *Cardenas v. Stephens*, 820 F.3d 197, 203 (5th Cir. 2016). *See also Garza*, 253 F.3d at 925 (recognizing the IACHR's "power is only to make 'recommendations'" and finding "it quite unlikely that 'recommendations to the government of any member state' could create judicially-cognizable rights in individuals"); *Flores-Nova v. Attorney Gen. of U.S.*, 652 F.3d 488, 493 (3d Cir. 2011) ("We conclude that the IACHR's decision does not create an obligation binding on the United States . . ."); *In re Hicks*, 375 F.3d 1237, 1241 n.2 (11th Cir. 2004) ("nor is any finding made by [the IACHR] binding on us"); *Tamayo v. Stephens*, 740 F.3d 991, 997–98 (5th Cir. 2014) (noting "the federal circuit courts that have considered this issue have concluded that IACHR decisions do not create a binding obligation on domestic courts" and denying a stay on that basis); *Roach v. Aiken*, 781 F.2d 379, 381 (4th Cir. 1986) (denying a stay based on IACHR's consideration of defendant's case and expressing doubt that "any future decision of the Commission would be enforceable in the domestic courts of this nation, state and federal").

The IACHR Recommendations are not binding because the United States has not obligated itself to be bound by them. The United States ratified the Charter of the Organization of American States ("OAS") in 1951, and ratified it as amended in 1968. *Garza*, 253 F.3d at 924. This treaty authorizes the creation of the IACHR and, more recently, the American Convention on Human Rights ("American Convention"). *Id.* (citing OAS Charter (Amended) Article 112, 21 U.S.T. 607). The IACHR's governing document is the Statute of the Inter-American Commission on Human Rights, which has been adopted by the OAS General Assembly.[3] The Statute recognizes a distinction between provisions of the American Declaration, on the one hand, and rights created by the American Convention on Human Rights, on the other. The American Convention is

---

[3] The Statute of the Inter-American Commission on Human Rights is available at http://www.oas.org/en/iachr/mandate/Basics/statuteiachr.asp.

an international human rights treaty that creates the Inter-American Court of Human Rights. While, as some courts of appeals have stated, that court's decisions are potentially binding on the parties to the American Convention, the United States has signed the American Convention, but has not ratified it. *Garza* 253 F.3d at 925. Thus, the United States is not a party to the American Convention, "and so that document does not yet qualify as one of the 'treaties' of the United States that creates binding obligations." *Id.*

In fact, the governing document of the IACHR sets out a specific procedure for "dealing with complaints against member nations like the United States that have not yet ratified the American Convention": the IACHR may simply "make recommendations" to these nations with reference to the American Declaration. *Id*. at 925 (citing Statute of the Inter–American Commission on Human Rights, Arts. 18, 20.). Further, the "OAS Charter's reference to the Convention shows that the signatories to the Charter intended to leave for another day any agreement to create an international human rights organization *with the power to bind members*." *Flores-Nova*, 652 F.3d at 493 (emphasis added) (citing *Garza*, 253 F.3d at 925).

In sum, the language of the OAS Charter and the Commission's Statute both indicate "that the United States has not obligated itself to be bound by the Commission's decisions." *Garza*, 253 F.3d at 925. *See also Flores-Nova*, 652 F.3d at 493 (holding that "the language of the OAS Charter and of the IACHR's governing statute indicates that IACHR's decisions are not binding on the United States"). Further undercutting Mitchell's claim, here the IACHR relies on the American Declaration of the Rights and Duties of Man as providing the legal force behind its recommendations. (*See* CR 1 at 10; Def. Ex. 1.) This Declaration, however, is simply "an aspirational document" that does not "create any enforceable obligations on the part of any of the OAS member nations." *Garza*, 253 F.3d at 925.

In the face of overwhelming precedent that the IACHR has no legal authority or application here, Mitchell notes that "Courts have recognized and relied upon decisions by similar international tribunals." (CR 1 at 22.) While this may be true with respect to similar

tribunals, it is not true with respect to the IACHR. Indeed, Mitchell fails to cite a single case in which a court held itself to be bound by IACHR recommendations. To the contrary, Mitchell concedes that the IACHR is limited to "mak[ing] recommendations." (CR 1 at 15.)

The United States has not ratified the American Convention and has not obligated itself to be bound by the IACHR's recommendations. The documents relied upon by Mitchell are "aspirational" and do not "create any enforceable obligations." *Garza*, 253 F.3d at 925. And granting Mitchell's motion would countenance a scheme whereby a defendant whose conviction and sentence are lawfully imposed under the Constitution and federal law, affirmed on direct review, and upheld on collateral review can nevertheless obtain relief at the last minute based on treaty provisions that he never raised in 17 years of proceedings. The Court should deny Mitchell's motion. In the alternative, it should be transferred to the Southern District of Indiana.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

RESPECTFULLY SUBMITTED this 21st day of August, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*<u>/s Krissa Lanham</u>*
KRISSA LANHAM
WILLIAM G. VOIT
SHARON K. SEXTON
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:


Jonathan C. Aminoff
Email: Jonathan.Aminoff@fd.org
Celeste Bacchi
Email: Celeste_Bacchi@fd.org
Federal Public Defender's Office
Central District of California
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310


Attorneys for Defendant Lezmond Charles Mitchell

*/s Krissa Lanham*
U.S. Attorney's Office