# Exhibit 1

IACHR Inter-American Commission on Human Rights

OAS More rights for more people

**INTER-AMERICAN COMMISSION ON HUMAN RIGHTS**
**RESOLUTION 21/2017**

Precautionary measure N°250-17

Lezmond Mitchell regarding the United States of America[1]
July 2, 2017

## I. INTRODUCTION

1. On April 3, 2017, the Inter-American Commission on Human Rights (hereinafter "the Inter-American Commission," "the Commission" or "the IACHR") received a request for precautionary measures from Mrs. Hillary Potashner, Mrs. Gia Kim and Mr. Jonathan Aminoff (hereinafter "the applicants") urging the Commission to request the United States of America (hereinafter "United States" or "the State") to suspend the application of the death penalty imposed on Mr. Lezmond Mitchell (hereinafter "the proposed beneficiary"), an American citizen and member of the Navajo indigenous people who is currently on death row, having been convicted for a murder and an armed robbery that took place in 2001. This request is related to petition P-627-17, in which the applicants denounced alleged violations of Article I (right to life, liberty and personal security), Article II (right to equality before the law), Article III (right to religious freedom and worship), Article XIII (right to the benefits of culture), Article XVIII (right to fair trail), Article XIX (right to nationality), Article XXV (right to protection from arbitrary arrest) and Article XXVI (right to due process of law) of the American Declaration of the Rights and Duties of Man (hereinafter "American Declaration" or "Declaration").

2. Having analyzed the allegations of fact and law presented by the applicants, the Commission considers that, in the event Mr. Mitchell is executed before it has had the opportunity to examine the merits of the matter, any eventual decision would be rendered moot, thus resulting in irreparable harm. Consequently, on the basis of Article 25 of its Rules of Procedure, the Commission hereby requests the United States to adopt the necessary measures to preserve the life and physical integrity of Mr. Lezmond Mitchell until the IACHR has ruled on his petition, so as not to render ineffective the processing of his case before the inter-American system.

## II. SUMMARY OF FACTS AND ARGUMENTS SUBMITTED BY THE APPLICANTS

### A. Main stages of the criminal proceeding

3. The applicants indicated that on October 28, 2001, the proposed beneficiary and another person murdered Mrs. Alyce Slim and her granddaughter Jane Doe – all of them members of the indigenous people of the Navajo – while they were in the tribe's territory. Three days later, using the vehicle that previously belonged to Mrs. Slim, he committed an armed robbery.

4. The proposed beneficiary's trial started on April 1, 2003, before the U.S. District Court for the District of Arizona, held at Flagstaff, and he was found guilty on September 15, 2003. According to the information submitted, Mr. Lezmond Mitchell was convicted to two life sentences for the two murders,

[1] In accordance with Article 17.2 of the Rules of Procedure of the IACHR, Commissioner James Cavallaro, an American citizen, did not participate in the debate or the discussion on the present precautionary matter.

as well as long terms of imprisonment for the armed robbery and related offenses that he committed three days later, while the capital punishment was imposed for the crime of carjacking since it resulted in the death of Mrs. Slim and her granddaughter.[2] During the proceedings, the proposed beneficiary was represented by two federal public defenders and by a private attorney.

5. The applicants indicated that the local authorities dismissed the remedies filed by the defense lawyers, and that "no domestic court allowed Mr. Mitchell the opportunity to develop his claims in the post-conviction process, in violation to the American Declaration (of Rights and Duties of Man)." On October 3, 2016, the Supreme Court of the United States dismissed a "writ of certiorari," thus exhausting the available domestic remedies regarding his conviction. In addition, they informed that the proposed beneficiary has currently filed a remedy in order to repeal the application of the death penalty through lethal injection for considering this to be a cruel, inhumane and degrading treatment (see para. 6 below). According to the applicants, this remedy is pending a decision and once decided, it would allow for the execution of the proposed beneficiary to be requested within months. To this date, the proposed beneficiary is the only prisoner of indigenous origin on death row.

B. Main arguments on the alleged violations within the context of the proceedings

6. The applicants mentioned the alleged violation of various rights enshrined in the American Declaration, such as: Article I (right to life, liberty and personal security), Article II (right to equality before the law),[3] Article III (right to religious freedom and worship),[4] Article XIII (right to the benefits of culture), Article XVIII (right to fair trail), Article XIX (right to nationality), Article XXV (right to protection from arbitrary arrest) and Article XXVI (right to due process of law). Therefore, the applicants filed petition P-627-17, requesting that the Commission declare that the United States violated these rights under the American Declaration.

7. In Particular, the applicants pointed out that these alleged violations are related to five different concepts: i) the arbitrary decision of applying the capital punishment to the proposed beneficiary in spite of the outright opposition of the Navajo people; ii) the alleged collusion between the federal authorities and the Navajo people to deprive the proposed beneficiary of his right to due process: iii) the ineffectiveness of the public defense during the oral stage of the trial; iv) the ineffectiveness of the public defense during sentencing;[5] and v) the outright dismissal of the U.S. District Court for the District of Arizona to allow a new hearing on evidentiary issues. In that regard, the applicants indicated that the judicial authorities ruled on these five claims, dismissing all of them, thus exhausting the domestic remedies after the Supreme Court's decision of October 3, 2016.[6] Currently, the only remedy pending is the one filed regarding the application of the lethal injection.

[2] According to the information submitted by the applicants, in accordance with the American legislation, the death penalty cannot be imposed for offenses committed among members of the indigenous people within their territories after the Navajo nation, in the context of a process of consultation with the federal authorities, decided to oppose the possibility of its application. Nevertheless, the crime of carjacking falls under federal jurisdiction, regardless of the status of the indigenous persons or whether the crime was committed inside their territories. Therefore, due to the fact that the carjacking resulted in the death of the victims, the attorney requested the capital punishment for the proposed beneficiary.

[3] According to the applicants, the proposed beneficiary is the first indigenous person that might be executed in the context of a criminal proceeding for offenses committed within autochthonous territory.

[4] It seems that the application of the capital punishments constitutes an offense to the religious sentiment of the Navajo people, because it is contrary to their beliefs.

[5] These last two aspects are related to the ineffectiveness of the public defense assigned to the proposed beneficiary during the submission of the evidence for the defense, among other issues related to the due process.

[6] According to the applicants, with the exception of the possibility of asking for a "pardon" which may be granted by the President of the United States.

8. In regard to the method of execution, the applicants argued that the lethal injection constitutes a cruel, inhumane and degrading treatment, due to the unnecessary risk of inflicting unbearable pain. Moreover, they argued that the authorities, to this date, have not developed a protocol in order to protect the persons sentenced to death from being subjected to cruel punishments.

9. In light of the aforementioned arguments, the applicants urged the Inter-American Commission to request the United States to suspend the execution of the death penalty imposed on the proposed beneficiary, in order to allow the Commission to analyze the merits of the petition.

## III. ANALYSIS OF THE REQUIREMENTS OF SERIOUSNESS, URGENCY AND IRREPARABLE HARM

10. The precautionary measures mechanism is part of the Commission's function of overseeing Member States' compliance with the human rights obligations set forth in the Charter of the OAS, and in the case of those States that have not yet ratified the American Convention on Human Rights, these obligations are set in the American Declaration of the Rights and Duties of Man. These general oversight functions are set forth in Article 18 of the IACHR Statute, and the precautionary measures mechanism is described in Article 25 of the Commission's Rules of Procedure. According to this Article, the Commission issues precautionary measures in situations that are serious and urgent, and where such measures are necessary to prevent irreparable harm to persons.

11. The Inter-American Commission and the Inter-American Court of Human Rights have consistently held that precautionary measures have a dual nature: precautionary and protective. Regarding their protective nature, the measures seek to avoid irreparable harm and preserve the exercise of human rights. Regarding their precautionary nature, the measures have the purpose of preserving legal situations being considered by the IACHR. Their precautionary nature aims at preserving those rights at risk until the petition in the inter-American system is resolved. Its object and purpose are to ensure the integrity and effectiveness of the decision on the merits and, thus, avoid infringement of the rights at issue, a situation that may adversely affect the useful purpose (*effet utile*) of the final decision. In this regard, precautionary measures or provisional measures thus enable the State concerned to fulfill the final decision and, if necessary, to comply with the ordered reparations. As such, for the purpose of making a decision in accordance with Article 25(2) of its Rules of Procedure, the Commission considers that:

a. "serious situation" refers to a grave impact that an action or omission can have on a protected right or on the eventual effect of a pending decision in a case or petition before the organs of the Inter-American system;

b. "urgent situation" refers to risk or threat that is imminent and can materialize, thus requiring immediate preventive or protective action; and

c. "irreparable harm" refers to injury to rights which, due to their nature, would not be susceptible to reparation, restoration or adequate compensation.

12. In analyzing those requirements, the Commission reiterates that the facts supporting a request for precautionary measures need not be proven beyond doubt; rather, a *prima facie* standard should be applied in order to assess whether there is a situation of seriousness and urgency.[7]

[7] For instance, in regard to the precautionary measures, the Inter-American Court has indicated that a minimum of detail and information is required to appraise *prima facie* an extremely serious and urgent situation. IAHR Court, *Matter of the children and adolescents deprived of their*

13. As a preliminary observation, the Commission deems necessary to point out that, according to its mandate, it is not called to rule on the responsibility of individuals' responsibilities in relation to the alleged commission of crimes or offenses. Moreover, it is not competent to review internal decisions on the basis of compliance with domestic law. In this sense, the Commission will hereby analyze the present request for precautionary measures under Article 25 of its Rules of Procedures. In regard to petition P-627-17, which denounces alleged violations to the American Declaration of the Rights and Duties of Man, the Commission recalls that the analysis of these claims will be carried out in compliance with the specific provisions related to the Petition and Case System, in accordance with the relevant provisions of its Statute and Rules of Procedure.

14. The Inter-American Commission observes that the death penalty has been subject to a strict regulation within the context of the inter-American system. In spite of the tendency noted among OAS Member States in favor of the gradual abolition of the death penalty,[8] for those States that maintain the death penalty, there is a series of restrictions and limitations established in the regional instruments of human rights with which the States are obliged to comply under international law.[9] These limitations are based on the acknowledgement of the right to life as the supreme right of the human being and the condition *sine qua non* to the enjoyment of all other human rights, thus demanding a higher scrutiny in order to ensure that any deprivation of the right to life that could occur by means of the application of death penalty aligns strictly to the requirements of the applicable instruments.[10] In that sense, the Commission has underlined that the right to due process plays an essential role in guaranteeing the protection of the rights of persons sentenced to death. In fact, among the guarantees of due process, the States are obliged to guarantee the exercise of the right to a fair trial, the strictest compliance with the right to defense, and the right to equality and to non-discrimination.[11]

15. In the present matter, the Inter-American Commission considers that the requirement of seriousness is met, in both its precautionary and protective aspects. In that sense, although the imposition of the death penalty is not prohibited in the American Declaration,[12] the Commission observes that the rights invoked mainly include the right to life under Article I of the American Declaration, in relation to the risk of Mr. Mitchell being executed within the context of a criminal procedure in regard to which the applicants denounced violations of the right to due process, among other rights. In particular, the applicants claimed that, during the criminal proceeding, the relevant authorities did not offer Mr. Mitchell the possibility of having an adequate defense, to provide mitigating evidence or access to effective remedies, among other issues. Furthermore, the Commission observes that the applicants claimed, in the context of the petition, that the application of the death penalty is incompatible with the religious beliefs and the worldview of the Navajo people, emphasizing the fact that Mr. Mitchell is the first American indigenous person on death row.

---

*liberty in the "Complexo do Tatuapé" of the Fundação CASA*. Request for the extension of precautionary measures. Precautionary measures regarding Brazil. Resolution of the Inter-American Court of Human Rights of July 4, 2006. See 23.

[8] IACHR. Report on The Death Penalty in the Inter-American Human Rights System: from Restrictions to Abolition, OAS/Ser.L/V/II Doc. 68, December 31, 2011, para. 12 and 138, available at: http://www.oas.org/es/cidh/docs/pdfs/penademuerte.pdf

[9] IACHR. Report on The Death Penalty in the Inter-American Human Rights System: from Restrictions to Abolition, OAS/Ser.L/V/II Doc. 68, December 31, 2011, para. 139, available at: http://www.oas.org/es/cidh/docs/pdfs/penademuerte.pdf

[10] IACHR, Report N°90/09, Case 12.644, Admissibility and Merits (Publication), Medellin, Ramírez Cardenas and Leal García, United States, August 7, 2009, para. 122.

[11] IACHR. Report on The Death Penalty in the Inter-American Human Rights System: from Restrictions to Abolition, OAS/Ser.L/V/II Doc. 68, December 31, 2011, para. 141, available at: http://www.oas.org/es/cidh/docs/pdfs/penademuerte.pdf

[12] IACHR. Report on The Death Penalty in the Inter-American Human Rights System: from Restrictions to Abolition, OAS/Ser.L/V/II Doc. 68, December 31, 2011, para. 2, available at: http://www.oas.org/es/cidh/docs/pdfs/penademuerte.pdf

16. Consequently, the Commission concludes that the rights of Mr. Mitchell, under the American Declaration, are *prima facie* at risk, considering the possibility of the death sentence being imposed and its subsequent effects in relation to the underlying petition which is currently being analyzed by the Commission.

17. As for the requirement of urgency, the Commission considers that it is fulfilled to the extent that, given the apparent exhaustion of domestic remedies and the allegations of the applicants regarding the setting of an execution date in the near future, this irreparable harm requires an immediate intervention in the present matter.

18. Regarding the requirement of irreparable harm, the Commission considers that the risk to the right to life is evident in light of the imminent application of the death penalty since the loss of life imposes the most extreme and irreversible situation possible. In regard to the precautionary nature, the Commission considers that if Mr. Mitchell is executed before the Commission has had the opportunity to analyze completely the petition P-627-17, the final decision would lack any effectiveness, because the situation of irreparable harm would have already materialized.

19. In this context, the Commission points out that, in compliance with the Article 25 (5) of its Rules of Procedure, "[p]rior the adoption of precautionary measures, the Commission shall request relevant information to the State concerned, except where the immediacy of the threatened harm admits no delay." In the present matter, taking into consideration the nature of the potential harm and its effect on the protected rights, as well as the allegations of the applicants regarding the exhaustion of the domestic judicial remedies, the Commission understands that immediate actions have to be adopted in order to protect the rights of Mr. Mitchell and guarantee the effectiveness of an eventual decision in the context of the aforementioned petition.

## I. BENEFICIARIES

20. The Commission extends this precautionary measure in favor of Lezmond Mitchell, who is duly identified in the context of this proceeding.

## II. DECISION

21. In view of the aforementioned background, taking into account the obligations of the United States in regard to human rights as a member of the OAS and as part of the oversight functions of the Commission to member state compliance with the human rights obligations set forth in the Charter of the OAS, and in the case of the member states that have not yet ratified the American Convention on Human Rights, in the American Declaration of the Rights and Duties of Man, the Commission considers that this matter meets *prima facie* the requirements of seriousness, urgency and irreparability set forth in Article 25 of its Rules of Procedure. Consequently, the Commission requests the United States to adopt the necessary measures to preserve the life and physical integrity of Mr. Lezmond Mitchell until the IACHR rules on his petition, so as not to render ineffective the processing of his case before the inter-American system.

22. The Commission also requests that the Government provide information within a period of 15 days from the date that the present resolution is issued on the adoption of the agreed precautionary measures and provide updated information periodically.

23. The Commission points out that, in accordance with Article 25 (8) of its Rules of Procedure, the granting of precautionary measures and their adoption by the State shall not constitute a prejudgment of any violation of the rights protected in the American Declaration of the Rights and Duties of Man and any other applicable instrument.

24. The Commission requests that the Executive Secretariat of the IACHR notify the United States of America and the applicants of the present resolution.

25. Approved on July 2, 2017, by: Francisco Eguiguren Praeli, President; Margarette May Macaulay, First-Vice President; Esmeralda Arosemena de Troitiño, Second Vice-President; José de Jesús Orozco Henríquez; Paulo Vannuchi; members of the IACHR.

Elizabeth Abi-Mershed
Assistant Executive-Secretary