# Exhibit 3

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**Lezmond Mitchell,** Plaintiff,

vs.

**United States of America,** Defendant.

**CV 09-08089-PCT-DGC**

Phoenix, Arizona
**August 15, 2019**

**BEFORE: THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**STATUS CONFERENCE**

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Ste. 312
401 West Washington Street, SPC 41
Phoenix, Arizona 85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 3 of 18



**A P P E A R A N C E S**

For the Plaintiff:

Federal Public Defender's Office
By: **JONATHAN C. AMINOFF,** ESQ.
By: **CELESTE BACCHI,** ESQ.
321 E. 2nd St.
Los Angeles, CA 90012

For the Defendant:

United States Attorney's Office
By: **WILLIAM G. VOIT,** ESQ.
By: **SHARON K. SEXTON,** ESQ.
40 N. Central Ave., Ste. 1800
Phoenix, AZ 85004

**P R O C E E D I N G S**

THE COURTROOM DEPUTY: This is case number CV-09-8089, Mitchell versus United States of America, on for status conference.

Counsel, please announce.

THE COURT: Yes, please.

MR. AMINOFF: Good morning, Your Honor. Deputy Federal Public Defenders Jonathan Aminoff and Celeste Bacchi for Lezmond Mitchell.

Your Honor, also with us in the courtroom is Michael Slim, who is a family member of the victims, and our defense advocate outreach specialist, Laurie Knight.

THE COURT: All right. Good morning.

MR. VOIT: Morning, Your Honor. William Voit and Sharon Sexton on behalf of the United States. With us is Marlene Beall, our chief victim advocate, who is here on behalf of the family.

THE COURT: Okay. Good morning.

Go ahead and have a seat.

Counsel, I wanted to visit with you about issues in the case that are coming in, timing, and making sure that we are doing it on a schedule that works, partly because my schedule is difficult this fall. I have virtually no time in the month of September for a hearing. October, I've got

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 5 of 18



11:03:51 slivers, but I've got to be at rules committee meetings through much of the month, and I just want to make sure we're doing things on a timetable that will allow me to respond appropriately, as well as find out what else you foresee

11:04:08 coming along in the case.

We have the motion to stay, obviously, that's been filed. I think the government's response is due in a few days. I think on the 19th; is that right?

MR. VOIT: It is, Your Honor, on the 19th and we'll

11:04:23 file a response by that date.

THE COURT: Okay. Do you intend to oppose the stay motion?

MR. VOIT: Yes, Your Honor.

THE COURT: Okay. Let me mention a couple of things

11:04:33 just so you're aware of what would be helpful to me, in addition to everything else you wish to argue.

I think, if I remember correctly, the petitioner in the brief cited Federal Rules of Civil Procedure 62(c) as the basis for the stay being filed in this court.

11:04:56 As you know, the language of that provision has to deal with injunctive relief, but it's been read more broadly by the courts, such as in the *Natural Resources* case that petitioner cites. By the way, it's now Rule 62(d). It's not (c) any more. It was amended December 1st.

11:05:14 But in addition to that, Rule 8(a)(1) of the Federal

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 6 of 18



11:05:17 Rules of Appellate Procedure should be consulted. You might have been aware of that. That's a rule that says in seeking a stay you go first to the District Court rather than the Court of Appeals. Because one of the obvious issues is since the 11:05:32 basis for the stay is a matter pending before the Ninth Circuit, should I be deciding a stay issue or should the Court of Appeals.

But if you could make sure to take into account Rule 8(a)(1) in connection with that, I would appreciate it.

11:05:49 And, as I'm sure the government is aware, the issue before the Ninth Circuit is one that I decided I think back in September and I did not issue a certificate of appealability. I did not think that jurists reasonably could debate the issue.

11:06:14 The Ninth Circuit disagreed with me on that and issued a certificate of appealability. Which tells me they see it as a genuine issue.

And so as I've read quickly the petitioner's brief and thought about it, the thing I would appreciate you being 11:06:31 sure to address in your response is if there's a live issue before a Court of Appeals which, if successful in the petitioner's view could lead to the reopening of the case, could lead to interviews with jurors, and potentially could lead to setting aside of a verdict, how do we go forward with 11:06:51 an execution with that issue unresolved? So I'll be very

11:06:55 interested in your thoughts on why that's appropriate.

So if we get the response filed by the 19th, which is Monday, I don't know what the timing is under the rule for your reply, but how soon could you file a reply given the fact

11:07:29 that about the start of September I'm largely unavailable and I'd love to decide this issue before I become unavailable.

MR. VOIT: If it's helpful, the timing is seven days under Rule 7.2.

THE COURT: So that would be the 26th?

11:07:46 MR. AMINOFF: Twenty-sixth, Your Honor. And we intend to make that date.

THE COURT: Okay. So let's plan, then, to get that on the 26th.

Does either side think we need to have oral argument

11:08:04 on that issue?

MR. AMINOFF: If it's helpful to the Court we'd be very happy to be here, Your Honor.

MR. VOIT: We certainly will submit the matter to the discretion of the Court. We do intend to request it, as the

11:08:15 plaintiff has, but we understand that's up to the Court's discretion.

THE COURT: All right. Let me look at it and then I'll let you know. But if we are going to have oral argument, the only day that's possible is Wednesday, September 4th. I'm

11:08:33 in trial the entire week of the 26th. Obviously Monday of

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 8 of 18


that week is Labor Day. I've got a full calendar on the 3rd. I'm not available on the 5th and 6th, and the weeks after that are booked. So we will look at that when the response comes in and then when the reply comes in. And if I think oral argument will be helpful, we'll get it set shortly after the reply is filed. But in any event my intent will be to get it ruled on before the end of the first week in September so that that issue does not languish.

From the petitioner's standpoint, do you have other motions in the works that you are reasonably confident will be filed? And if so, do you have any sense of the timing given what I've said about September and October?

MR. AMINOFF: Not --

THE COURT: I'm not asking you to show your hand if you are only strategizing yet. But if you know things are coming, it would be helpful to know what you know is coming so we can try to figure out how best to deal with it.

MR. AMINOFF: A lot of it really depends on sort of, for lack of a better term, how things shake out, Your Honor. We do have some litigation pending in the international court. We've approached the state department about a friendly settlement. If that doesn't work out we would anticipate filing something in this court.

THE COURT: What you are you referring to, pending in the international court?

MR. AMINOFF: We filed a petition for violation of human rights in the Inter-American Commission on Human Rights. They've issued an injunction against Mr. Mitchell's execution. They issued that several years ago. We've notified them of the execution date and approached the State Department about resolution. They're considering the matter right now.

If it transpires they don't agree to a settlement, then we would probably need to file something in this Court.

THE COURT: Do you have any sense of the timing of all of that?

MR. AMINOFF: I'm afraid I don't. And I will try and update the Court, but that's sort of the best I have right now.

THE COURT: I understand there's a case that's been pending for quite a while in the Federal District Court in Washington, D.C. --

MR. AMINOFF: Yes, Your Honor.

THE COURT: -- challenging the federal execution protocol. Do you potentially see that case affecting this matter?

MR. AMINOFF: I do, Your Honor, and I can give you a but of an update on that as well. We did have an extended status conference on that this morning.

We have agreed -- so there's four separate lawsuits. They're all going to be merged. And the agreement we've come

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 10 of 18



11:11:14 to with the government, and what I think the court will issue a minute order about later today, is that discovery in that case is going to go on through the end of February. The five inmates who have execution warrants will be moving for
11:11:29 preliminary injunctions in that case. I don't know where the court's going to come out on that, obviously, but that is going on.

THE COURT: Is Mr. Mitchell a party in that case?

MR. AMINOFF: As of right now, no. But I anticipate
11:11:42 that he will be a party in that case before much longer.

THE COURT: Okay. I remember from something I've read in the file somewhere that he was a party at some point and then withdrew?

MR. AMINOFF: That's exactly -- that's exactly right.

11:11:55 THE COURT: So you're going to be seeking to intervene again on his behalf?

MR. AMINOFF: Yes. More or less, yes.

THE COURT: Or something -- okay.

Did this status conference this morning include any
11:12:08 discussion about requests for injunctions from these five individuals?

MR. AMINOFF: Yes, Your Honor. So it did include a brief discussion about getting a preliminary injunction for these -- well, for at least one of these people. The
11:12:20 government is opposing it.

11:12:24 So, I mean, we're just going to have to see how that works, but it would be, I think, probably the intention of all five to be seeking preliminary injunctions.

THE COURT: Okay. What I think would be helpful,

11:12:35 when there are developments in that litigation or in the international arena that could potentially have any effect on this case, if you could just file brief status reports, that would be helpful to me.

MR. AMINOFF: Yes, Your Honor.

11:13:00 THE COURT: How about from the government's perspective? Do you have any thoughts on issues that will be arising or will you mostly be just reacting to what's filed?

MR. VOIT: I think the Court's anticipated most of the questions that I had, so we don't have anything else to

11:13:13 raise at this time.

THE COURT: Okay.

A question that you may or may not be ready to answer that came to my mind when I was looking at the judgment in this case and the notice Mr. Mitchell received is, I haven't

11:13:36 looked at it in a week, but my memory is Judge Murguia's order said that the execution would be carried out pursuant to State, Arizona State, procedures. Words to that effect.

And I inferred from the notice that Mr. Mitchell received, that I guess was attached to your motion, I don't

11:14:04 know exactly where I read it --

11:14:06 MR. AMINOFF: It was.

THE COURT: -- that the government's intent is for the execution to occur in the place where he is housed.

MR. AMINOFF: Yes, Your Honor.

11:14:13 THE COURT: And I'm just wondering how those two work. Is the idea, from the government's perspective, the execution would occur there but they would follow Arizona State procedures?

MR. VOIT: I'm not prepared to respond to that, Your 11:14:25 Honor. But if you would like, I can file a status report or -- how would it be useful to respond to the Court's question?

THE COURT: Well, it was more a matter of curiosity. I don't think it affects anything that's pending now. But I 11:14:38 guess one of the things I was trying to think about, looking down the road, is, is there at some point going to be a suggestion if the execution is going to be planned for it that he be moved here for Arizona procedures? Is there going to be some process for insuring that if it occurs elsewhere it 11:15:01 conforms with Arizona procedures?

Arizona procedures, as you know, have been recently modified some.

I just was trying to think through how that might all play out.

11:15:13 MR. VOIT: And I think our plan would be to respond

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 13 of 18



11:15:15 if that matter is raised by the petitioner.

THE COURT: All right.

Any thoughts on that?

MR. AMINOFF: Several. I would be a bit more comfortable speaking with the Court in camera and ex parte on that issue. It has been raised in a lethal injection suit.

THE COURT: In DC?

MR. AMINOFF: Yes.

THE COURT: When you say "it," what has been raised?

MR. AMINOFF: Whether the federal government's lethal injection protocol as it existed at the time when the suit was raised violates the Federal Death Penalty Act.

THE COURT: I'm not quite understanding --

MR. AMINOFF: I'm sorry. The Federal Death Penalty Act --

THE COURT: No, no. I understood what you said. I'm not quite understanding your reference to an in camera or ex parte communication.

MR. AMINOFF: I'm not fully comfortable discussing our litigation strategy in open court, Your Honor.

THE COURT: Well, that's fine. I don't want you to share with me in camera or ex parte either.

MR. AMINOFF: Fair enough.

THE COURT: I just didn't know if there was some -- yeah. We should do it all on the public record. So you don't

11:16:21 need to reveal any strategy.

11:16:43 11:17:05 What is the nature of the discovery that's happening in the DC case between now and February that you mentioned?

MR. AMINOFF: It's going to be several depositions of the named defendants. So the idea is under lethal injection standards, one of the things we're required to do is to propose an alternate method of execution.

We don't know much at all about the current proposed method, and so the plan is that we'll be allowed to conduct some limited discovery, which will be depositions, before filing our amended complaint, which will address the new lethal injection protocol.

THE COURT: So the depositions will address the new protocol?

11:17:18 MR. AMINOFF: Yes, Your Honor.

THE COURT: Trying to obtain discovery on what exactly is planned?

MR. AMINOFF: Exactly. Things like where this drug is coming from, how the staff are being trained, who is

11:17:28 actually administering it, issues of compounding the drug. There's a lot that we don't know.

THE COURT: Okay.

And after the discovery, is the thought then that there are cross-motions for summary judgment or --

11:17:48 MR. AMINOFF: So after the discovery period is

11:17:51 completed at the end of February, we will then file an amended complaint by the end of March. And that's all that's sort of planned at this point.

THE COURT: All right. Okay.

11:18:02 Are there other matters on either side that you think we need to take up today?

MR. AMINOFF: I have one other issue if that's all right.

THE COURT: Yeah.

11:18:14 MR. AMINOFF: Mr. Slim requested that I ask the Court if the Court would issue an order allowing him to mail Mr. Mitchell a Bible. It's very important to him. As Your Honor well knows, he's a member of the victim's family and that's something he would like to do.

11:18:29 THE COURT: Is there any objection from counsel?

MR. VOIT: I do not believe the Court should issue an order. People are allowed to mail letters how they want to mail letters.

MR. AMINOFF: My understanding is there's a policy 11:18:41 that you're not allowed to send books. And you're welcome to inspect the Bible if you'd like to flip through it. It's just a Bible.

MR. VOIT: This appears, if I'm understanding correctly, to involve receipts of materials at the prison; is 11:18:55 that right?

11:18:58 MR. AMINOFF: Appears to -- sorry?

MR. VOIT: When you refer to a policy -- I'm sorry, Your Honor, may I have a moment with my colleague?

THE COURT: Yeah.

11:19:05 (Counsel confer.)

MR. VOIT: Your Honor, my understanding from my conversation with my colleague is that this is reference to a prison regulation about what materials can and can't be received.

11:19:36 I don't believe the District of Arizona should be telling Terre Haute what they can and can't -- what prisoners can and can't receive under their policies. I'm sure there are administrative procedures they need to go through if they have some grievance against mail issues, and I think it should 11:19:51 be taken up out there.

THE COURT: Any other thoughts?

MR. AMINOFF: That's -- that's it, Your Honor.

THE COURT: Well, I certainly am not going to issue an order based just on this request. I don't know anything 11:20:03 about the policy, I don't know anything about the procedures, I don't know, as Mr. Voit has raised, whether I have jurisdiction to order them to permit a mailing.

Right now I'm dealing with the mailing regulations in the Arizona Department of Corrections in a different case and 11:20:26 they're very complex and in flux.

11:20:28 So what I would say is if for some reason Mr. Slim believes that I'm the right one to seek that permission from, then I think there needs to be something filed that lays out what the issue is, what the regulations are, what efforts have been made short of a court order to accomplish it, and then I would allow a response to be filed so that I can consider all of the regulations that my order might affect before I issue it.

MR. AMINOFF: I understand, Your Honor. Thank you. I will be in Terre Haute tomorrow. I'll try to resolve the issue myself. Thank you.

THE COURT: All right.

Anything else?

MR. VOIT: Nothing from the United States. Thank you.

THE COURT: Thanks for coming in. We'll look forward to that schedule.

(End of transcript.)

* * * * *

Case 3:01-cr-01062-DGC Document 606-6 Filed 08/06/20 Page 18 of 18



**C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 22nd day of August, 2019.

s/ Patricia Lyons, RMR, CRR
Official Court Reporter