CUAUTEMOC ORTEGA (Cal. Bar No. 257443)
Interim Federal Public Defender
JONATHAN C. AMINOFF (Cal. Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (Cal. Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
Lezmond Charles Mitchell

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>Plaintiff/Respondent. | No. 20-CV-08217-DGC-ESW<br><br>(Criminal No. 3:01-CR-01062-DGC)<br><br>(Civil No. 3:09-CV-08089-DGC)<br><br>**<u>DEATH-PENALTY CASE</u>**<br><br>**EXECUTION SET FOR AUGUST 26, 2020**<br><br>Honorable David G. Campbell<br>United States District Judge<br><br>**COMBINED REPLY IN SUPPORT OF (1) 28 U.S.C. § 2255 MOTION AND (2) MOTION FOR STAY OF EXECUTION**<br><br>**Oral Argument Requested** |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 2
A. Mitchell has not unnecessarily delayed in bringing his motion .......... 2
B. Mitchell's § 2255 motion is not a second or successive petition .......... 3
C. Mitchell has established a substantial case for relief that requires a factual analysis by this Court. .......... 7
D. Mitchell has established irreparable injury .......... 10
E. The balance of equities and the public interest weighs in favor of a stay .......... 10
III. CONCLUSION .......... 12
CERTIFICATE OF SERVICE .......... 13

## I. INTRODUCTION

Native American tribes in the United States have a right to govern themselves and tribal sovereignty can be limited only through a treaty with the federal government or through a federal statute. The Navajo Nation did not opt-in to the Federal Death Penalty Act, thereby denying the federal government the ability to sentence a tribal member to death for an intra-Indian crime occurring on tribal land. 18 U.S.C. § 3598; *United States v. Gallaher*, 624 F.3d 934, 936 (9th Cir. 2010). The Navajo Nation, members of the victims' family, and even the local United States Attorney's Office all vociferously objected to Mitchell's capital prosecution. *Mitchell v. United States ("Mitchell II")*, 790 F.3d 881, 894-97 (Reinhardt, J., dissenting). Yet Mitchell's case is the only one where the federal government has broken its promise to Native Americans not to pursue the death penalty unless the tribe explicitly accepts that exercise of the federal government's jurisdiction. And it marks the first time the United States Government has sought, and obtained, a federal death sentence against a Native American in modern history.

The federal government benefitted from the exercise of tribal law, with FBI agents interrogating Mitchell on later-filed federal charges while he was held for weeks pending sentencing on a charge that carried no jail time. It then ignored the Nation's tribal sovereignty by seeking and obtaining a death sentence against Mitchell, on a carjacking-resulting-in-death charge that allowed it to bypass the Nation's consent in the decision. "The imposition of the death penalty in this case is a betrayal of a promise made to the Navajo Nation, and it demonstrates a deep disrespect for tribal sovereignty." *Mitchell v. United States (Mitchell III)*, 958 F.3d 775, 793 (9th Cir. 2020) (Christen, J., concurring).

Courts have been unable to provide a remedy for the Government's actions, until now. On August 12, 2020, the IACHR concluded the Government violated Mitchell's right to due process and a fair trial under Articles XVIII and XXVI of the American Declaration. IACHR Mitchell Report, at 21. Although the American Declaration is

itself a non-binding declaration of human rights norms, those rights become binding, enforceable rights when applied in a specific case by the IACHR, a treaty-based tribunal specifically empowered to interpret and promote the rights contained in the American Declaration. As a result of this, and other violations of the American Declaration enumerated in Mitchell's § 2255 motion, Mitchell's convictions and death sentence must be vacated. The Court should grant a stay to adjudicate these claims, which arose less than ten days ago.

## II. ARGUMENT

### A. Mitchell has not unnecessarily delayed in bringing his motion.

The Government argues that Mitchell's "delay alone warrants denial of his claim," because "known about the IACHR Precautionary Measures since July 2017, and he has known about [IACHR's] recommendations since July 2020." Precautionary Measures do not constitute a substantive ruling by the Commission determining that a petitioner's rights have been violated. Rather, they "preserv[e] a legal situation, or the subject of a petition, on which the Commission is to exercise its jurisdiction," and are "'protective" in the sense of preserving the exercise of human rights." *See* Inter-American Commission on Human Rights, Reform of its Rules of Procedure, Precautionary Measures, available at https://oas.org/en/iachr/consultation/2_measures.asp. Indeed, "the granting of such measures . . . shall not constitute a prejudgment on the violation of the rights protected by the American Convention on Human Rights or other applicable instruments." *Id.*, quoting Article 25, Inter-American Commission on Human Rights Rules of Procedure. And although the IACHR issued its initial decision in July 2020, that decision was preliminary, and technically confidential, to provide the parties an opportunity to resolve the case before the Report was finalized and officially published on August 12, 2020.

On July 29, 2020, the Government provided Mitchell notice of its intent to execute him pursuant to 28 CFR 26.3(a)(1). On August 12, 2020, the Commission

issued its final report in Mitchell's case, giving rise to the claims asserted in his § 2255 motion, which he filed eight days later on August 20, 2020. The Government chose to set an execution date with just 28 days' notice at a time when the Ninth Circuit's stay order was still in effect and when it was aware that Mitchell intended to pursue this litigation, which he could not do prior to issuance of the Commission's final report. The Government attempts to blame their own rush to execute Mitchell on him by now arguing that that he has waited until the "eve" of his execution. To the contrary, Mitchell has acted promptly to prevent the Government from executing him in contravention of his human rights, as determined by an international body whose authority the United States is bound to respect through its treaty obligations. He has not waited until the eve of execution, and the proximity of his motion and execution date are not caused by any delay on Mitchell's part.

**B. Mitchell's § 2255 motion is not a second or successive petition.**

The Government incorrectly argues that Mitchell's § 2255 motion is an unauthorized second or successive petition.

While this is the second § 2255 motion Mitchell has filed challenging his conviction and death sentence, it is not successive because it raises claims Mitchell could not have raised in his first petition. *See Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008). As the Supreme Court has explained, it is well-settled that the phrase "second or successive" does not simply refer to all applications filed second in time. *Magwood v. Patterson*, 561 U.S. 320, 322 (2010) (citing *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)).

To determine whether a second-in-time pleading should be deemed successive, a court must look to the purposes of AEDPA, which are "to further the principles of comity, finality, and federalism." *Panetti*, 551 U.S. at 945 (quotation marks omitted). The Supreme Court has cautioned courts to ensure that "petitioners [do not] run the risk under the proposed interpretation of forever losing their opportunity for federal review" and to "resist[] an interpretation of the statute that would . . . 'close our doors to a class

of habeas petitioners seeking review without a clear indication that such was Congress' intent.'" *Id*. at 945-46 (quotation marks omitted); *see also Castro v. United States*, 540 U.S. 375, 380-81 (2003).

As the Supreme Court observed in *Panetti*,

> We are hesitant to construe a statute, implemented to further the principles of comity, finality, and federalism, in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality, to the benefit of no party.

551 U.S. at 947.[1]

The *Panetti* Court rejected the state's argument that a prisoner contemplating a future *Ford* claim must preserve that claim by filing it in his or her first habeas petition. *Id*. at 946. It explained that were such an interpretation of "second or successive" correct, "the implications for habeas practice would be far reaching and seemingly perverse." *Id*. at 943 (quotation omitted). "A prisoner would be faced with two options: forgo the opportunity to raise a *Ford* claim in federal court; or raise the claim in a first federal habeas application (which generally must be filed within one year of the relevant state-court ruling), even though it is premature." *Id*. at 943.

Mitchell's claims that are the subject of this second-in-time motion arise from a decision by the Commission issued on August 12, 2020; Mitchell, therefore, could not have raised these claims in his first federal petition. As the Fifth Circuit has recognized, a petitioner whose claims in a second-in-time habeas petition are based on a Commission decision issued after the petitioner filed his first federal petition need not seek authorization to file a habeas petition concerning that decision. *In re Tamayo*, 552 F. App'x 371, 374 (5th Cir. 2014); *see also Leal Garcia v. Quarterman*, 573 F.3d 214, 222-24 (5th Cir. 2009) (determining that petitioner's second-in-time § 2255 petition was not successive because it relied on a presidential declaration in light of an

[1] The Court held in *Panetti* that a claim made pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986), arguing that the petitioner is not legally competent to be executed, cannot be deemed successive because the claim itself will not become ripe until well after the initial habeas petition will have been adjudicated.

International Court of Justice ("ICJ") opinion issued after petitioner's first habeas petition was resolved).

The Government argues that *Panetti* has no application to Mitchell's case because it involved a *Ford* claim (regarding petitioner's competency to be executed) that was not ripe until a "new factual predicate" arose; "before the competency issue was ripe, no claim of the sort could have been brought." Gov't Reply, at 9. The Government is incorrect. Like the petitioner in *Panetti*, the claims Mitchell raises in his second-in-time section 2255 motion were not ripe before the Commission issued its formal decision on August 12, 2020, finding that Mitchell's rights were violated. *See also In re Tamayo*, 552 F. App'x at 374. Therefore, "no claim of the sort could have been brought" before Mitchell filed his section 2255 motion on August 20, 2020, and his motion is not successive within the meaning of 28 U.S.C. § 2255. If the Court determines that Mitchell's petition is successive, Mitchell respectfully requests that this Court transfer his motion to the Ninth Circuit for certification in the interest of justice pursuant to 28 U.S.C. § 1631.

Alternatively, the Government incorrectly argues that Mitchell's petition fails to raise a valid § 2241 claim. However, if the Court finds that Mitchell's section 2255 motion is successive, and is therefore barred from consideration by the Court, it follows from the "rare circumstances" of Mitchell's case that he is entitled to bring his claim under section 2241. *Garza v. Lappin*, 253 F.3d 918, 922 (7th Cir. 2001). This is because, as the Seventh Circuit has recognized in the context of IACHR rulings, "it was literally impossible for him to have raised it at any time earlier than . . . the date of the Commission's decision, because the United States had no judicially-cognizable treaty obligation not to execute Garza until that time." *Id*. at 923. Thus, Mitchell is "entitled to raise his argument in a habeas corpus petition under § 2241." *Id*. at 923.

The Government also argues the Court may construe Mitchell's § 2255 motion as a § 2241 petition, but then must transfer it to the Southern District of Indiana, the district of confinement. While the Seventh Circuit concluded in *Garza v. Lappin*, 253

F.3d 918 (7th Cir. 2001), that a petitioner's claims that the Government had to abide by the IACHR's decision were properly cognizable under § 2241 in the district of his incarceration, the decision did not hold that was the only avenue for enforcement. In fact, the court recognized the argument Mitchell presses here: that Mitchell's § 2255 motion, "which he filed as soon as the Inter-American Commission issued its report, should be considered a 'first' § 2255 motion." *Id.* at 924.

The *Garza* Court found support for his argument in *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), stating:

> Before we turn to the merits of Garza's petition, there is one additional potential wrinkle in the jurisdictional analysis that is worth considering. The foregoing discussion assumes for purposes of analysis that Garza's petition would be considered a "second or successive" § 2255 motion. But there is at least a possibility that the motion is not successive at all. If his petition could be considered a first petition, of course, there would be no bar to his filing it in the Southern District of Texas under § 2255, in which case his § 2241 petition here would be improper. A recent Supreme Court decision at least raises the possibility that this is the proper resolution of Garza's jurisdictional quandary. In *Stewart v. Martinez-Villareal*, 523 U.S. 637, 140 L. Ed. 2d 849, 118 S. Ct. 1618 (1998), the petitioner filed a § 2255 petition raising, among other issues, a challenge to his competency to be executed. The district court ruled on the bulk of the issues, but dismissed the competency challenge as not yet ripe, because no execution date had been set. After the execution date was set, the petitioner renewed his motion in the district court challenging his competency. The Supreme Court held that, because the petitioner had raised the

> competency challenge at the first time it was ripe, it should be considered a first § 2255 petition, not a successive petition. *Id.* at 642-45. This naturally meant that it was not procedurally barred.

*Garza*, 253 F.3d at 923.[2]

**C. Mitchell has established a substantial case for relief that requires a factual analysis by this Court.**

Mitchell has established a substantial case for relief on the merits. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). "Often a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit," as Mitchell's motion does here. *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)). The Government argues that Mitchell's claims are foreclosed by the law of other circuits, both those decisions are not binding on this Court. The Ninth Circuit has not yet ruled on the impact of an IACHR decision on a federal capital case, and this Court should give the Ninth Circuit the opportunity to do so by issuing the stay, and allowing litigation on this important issue to go forward.

The IACHR ruled that Mitchell's conviction and death sentence violate his right to be free from unlawful and arbitrary arrest (Article XXV); his right to a fair trial and to due process of law (Articles XVIII and XXVI); his right to effective assistance of counsel (Articles XVIII and XXVI); his right to effective legal remedies (Articles

---

[2] The Seventh Circuit noted that Garza previously presented his IACHR claims in a § 2255 motion, which the Fifth Circuit (encompassing Garza's district of conviction), denied as successive in a one-line order. *Id.* at 924. The Seventh Circuit speculated the Fifth Circuit may have distinguished Garza's case from *Martinez-Villareal* because in that case the petitioner raised his competency argument in his first § 2255 motion, where it was dismissed as unripe, before re-raising it in a second motion; Garza, like Mitchell, did not raise IACHR claims in his initial motion. The Seventh Circuit's speculative reasoning has been foreclosed by *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) ("We conclude . . . that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe.").

XVIII and XXVI); and his right to be free from cruel, infamous, or unusual punishment (Articles XXV and XXVI). The Government maintains these claims are not new and are simply recycled versions of previous claims. While the facts underlying the claims are not new to the Court, Mitchell has never before been able to plead them under the law and rights he now asserts.

Contrary to the Government's assertions, the Commission Report created rights under international law that are binding on the United States for two reasons: (1) because they are derived directly from the OAS Charter, a treaty within the meaning of the U.S. Constitution; and (2) because they are derived, through the OAS Charter, from the American Declaration, a statement of human rights norms the United States has not only adopted, but helped to draft. The Commission is a tribunal expressly established under the OAS Charter to promote and protect human rights and its ruling on the application of human rights principles in Mitchell's case must be considered authoritative. For these reasons, this Court is obligated to follow the Commission's recommendation that Mitchell be granted a new trial, and that if the new trial results in a conviction, that Mitchell's sentence of death be commuted, in light of "the sovereign decision of the Navajo Nation against the use of the death penalty." IACHR Mitchell Report, at 26.

The Government contends there is no indication the American Declaration or the Charter intended to create privately enforceable rights. Although the American Declaration is itself a non-binding declaration of human rights norms, those rights become binding, enforceable rights when applied in a specific case by the Commission, a treaty-based tribunal specifically empowered to interpret and promote the rights contained in the American Declaration.[3] The Ninth Circuit has yet to evaluate this argument and should not be deprived of the opportunity to do so.

---

[3] The Government contends that IACHR recommendations are not enforceable because they are just that: recommendations. Even if this Court finds that the

Alternatively, even if this Court concludes that the OAS Charter is a non-self-executing treaty, it is well established that habeas has historically been available to enforce rights under treaties that do not themselves create private rights of actions. *See, e.g.*, *Chew Heong* v. *United States*, 112 U.S. 536 (1884) (granting habeas relief to a Chinese laborer based on an 1880 treaty between the United States and China where the treaty did not create a private right of action); *see also* David Sloss, *When Do Treaties Create Individually Enforceable Rights? The Supreme Court Ducks the Issue in* Hamdan *and* Sanchez-Llamas, 45 COLUM. J. TRANSNAT'L L. 20, 98-99 (2006) (discussing *Chew Heong*). *See generally Ogbudimkpa* v. *Ashcroft*, 342 F.3d 207, 217-20 & n.22 (3d Cir. 2003) (discussing the availability of habeas corpus to enforce rights conferred by non-self-executing treaties in light of implementing legislation).

Further, the weight of the Supreme Court's precedents suggests that claims by petitioners in habeas cases can be analogized to claims by defendants in other civil—and even criminal—lawsuits. *See, e.g.*, *United States* v. *Rauscher*, 119 U.S. 407 (1886). In those contexts, treaties that do not create a private right of action have nevertheless been available as a substantive defense. *See, e.g.*, *Kolovrat* v. *Oregon*, 366 U.S. 187 (1961); *Cook* v. *United States*, 288 U.S. 102 (1933); *Patsone* v. *Pennsylvania*, 232 U.S. 138 (1914); *Carneal* v. *Banks*, 23 U.S. (10 Wheat.) 181 (1825); *Orr* v. *Hodgson*, 17 U.S. (4 Wheat.) 453 (1819); *Moodie* v. *The Ship Phoebe Anne*, 3 U.S. (3 Dall.) 319 (1796); *see also* Amicus Brief of Law Professors Louis Henkin et al. at 9-13, *Hamdan*, 126 S. Ct. 2749 (No. 05-184) (discussing the significance of these cases). *See generally* Sloss, *supra*, at 51-91 (exhaustively tracing the history of cases in which the Supreme Court considered the enforceability of treaties).

Thus, unless a non-self-executing treaty is not a "treaty" for purposes of the Supremacy Clause—a proposition without any support in the case law—habeas

---

recommendations, i.e., the specific remedies, for the violations found by the IACHR are not enforceable, the Commission's conclusions as to findings of fact and the analysis of law are binding for all the reasons discussed in Mitchell's second 2255 motion and this reply.

otherwise remains available as a remedy to petitioners alleging violations of their treaty-based rights.

For the foregoing reasons, Mitchell has established a likelihood of success on the merits, and this Court should grant Mitchell's motion to stay. Alternatively, he has demonstrated "serious questions going to the merits" of his claims.

**D. Mitchell has established irreparable injury**

The Government erroneously asserts that Mitchell's motion does not challenge the lawfulness of his conviction or sentence. To the contrary, Mitchell's § 2255 motion clearly states he challenges his convictions and sentence because they were imposed in violation of the laws of the United States (Mot. at 1), which includes laws that flow from treaties entered into by the United States (Mot. at 11). The harm of being executed is inarguably "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent [it]." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (internal quotation marks omitted); *see also Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (Powell, J., concurring) (stating that the requirement of irreparable harm if stay is not granted "is necessarily present in capital cases"). This factor heavily weighs in favor of staying Mitchell's execution.

**E. The balance of equities and the public interest weighs in favor of a stay**

Mitchell has established how the balance of equities favor a stay. The thrust of the Government's response is that the Government has a strong interest in finality. This argument rings hollow given its inaction for years to seek any execution, let alone Mitchell's, and more than eight-year delay in even issuing a new lethal injection protocol. *Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *7 (D.D.C. Nov. 20, 2019), *vacated and remanded on other grounds sub nom. In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). Regardless, as the district court held in the *Protocol Cases*, "the potential harm to the

government caused by a delayed execution is not substantial." *Id*. at *7. Moreover, the Government will suffer little appreciable harm if a stay is granted. The only "harm" that would result is that the Government would have to wait for review of this case before it could carry out Mitchell's execution—if indeed it would still be permitted to execute him following this Court's resolution of Mitchell's claims. That delay is an insignificant and temporary harm compared to the irreparable harm of permitting an unlawful execution to take place.

The Government also asserts that equity must consider the State's strong interest in proceeding with the execution, which is also shared by crime victims. The Government narrowly focuses on the interests of the United States and a handful of the victims' relatives in making this argument. Mitchell agrees the Court should consider the interests of the State and crime victims; to that end, it should consider the sovereign and spiritual interests of the Navajo Nation, which has opposed this execution for decades.[4] And the Court should not simply focus on the family members who support execution, it should also consider the interest of the victims' family that never wanted Mitchell to be subjected to the death penalty. *See Mitchell II*, 790 F.3d at 894 (Reinhardt, J., dissenting).

Finally, the public has no interest in an illegal execution and in short circuiting a legitimate judicial process, but has a great interest in ensuring that the most serious

---

[4] *See* Domonoske, Camila, *Navajo Nation Asks Trump to Commute Death Sentence of Native Man Facing Execution*, NPR (Aug. 11, 2020), available at https://www.npr.org/2020/08/11/901337273/navajo-nation-asks-trump-to-commute-death-sentence-of-native-man-facing-executio (last visited Aug. 21, 2020); Press Release, Office of the Speaker, 24th Navajo Nation Council, *Navajo Nation calls for end to Federal execution of tribal member, Lezmond Mitchell* (Aug. 13, 2020), available at http://www.navajonationcouncil.org/PressReleases/2020/AUG/Navajo_Nation_calls_for_end_to_Federal_execution_of_tribal_member_Lezmond_Mitchell_PR.pdf (last visited Aug. 21, 2020); Slater, Carl, *Lezmond Mitchell's Death Sentence is an Affront to Navajo Sovereignty*, The New York Times (Aug. 19, 2020), available at https://www.nytimes.com/2020/08/19/opinion/lezmond-mitchell-death-sentence-execution.html (last visited Aug. 21, 2020).

punishment is enforced lawfully. *Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *8.

## III. CONCLUSION

The Court should stay Mitchell's execution to allow adequate review of his claims.

Respectfully submitted,

CUAUTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 21, 2020

By *[/s/ Jonathan Aminoff]*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant
Lezmond Charles Mitchell

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William G. Voit, Assistant U.S. Attorney
Arizona State Bar No. 025808

Sharon Sexton, Assistant U.S. Attorney
Arizona State Bar No. 012359

Krissa M. Lanham
Arizona State Bar No. 035085

*/s/ Iliana Hernandez*
Iliana Hernandez